UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MELISSA A. JOHNSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-1013 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| *Acting Commissioner of the Social* | § | |
| *Security Administration*, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is plaintiff Melissa A. Johnson's ("Johnson") motion for summary judgment. Dkt. 7. Also pending is a cross-motion for summary judgment filed by defendant Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration (the "Commissioner"). Dkt. 9. After considering the motions, responsive briefing, record evidence, and applicable law, the court finds that Johnson's motion (Dkt. 7) should be **DENIED**, and the Commissioner's motion (Dkt. 9) should be **GRANTED**. The Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND

Johnson filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner regarding Johnson's claim for disability insurance benefits under Title II of the Social Security Act (the "Act").

### A.   Medical History

Johnson was born on January 8, 1980. Tr. at 33.[1] In 1996, Johnson suffered a workplace back injury while working at a grocery store. *Id.* at 133. She thereafter went to physical therapy for

---

[1] "Tr." refers to the certified administrative transcript filed as Docket Entry No. 4 in the record of this appeal on July 17, 2013. Dkt. 4.

a sustained period of time, and in May 2001, Dr. Bruce Weiner performed back surgery on Johnson. *Id.* at 131–33; *see also id.* at 458–59 (describing a decompression laminectomy and facetectomy performed in 2001). Beginning in 2009, Johnson was prescribed several medications: Buspar, Prozac, and Xanax for anxiety and depression; Flexeril and Robaxin for muscle spasms; Morphine and Percocet for chronic pain; and Ambien for difficulties sleeping. *Id.* at 129, 164. In 2009 and 2010, Johnson's physician Dr. Jeffrey Cannella administered three epidural injections in Johnson's lower lumbar spine and provided her with monthly counseling sessions. *Id.* at 130.

**B.     Application to the Social Security Administration**

On August 14, 2010, Johnson applied for disability insurance benefits, claiming a disabling back injury, arthritis, depression, limited mobility, chronic pain, sleep deprivation due to pain, arachnoiditis, uncontrolled bladder issues, and disorder of the spine and musculoskeletal system. *Id.* at 126. Her alleged onset date is September 29, 2005, and her date last insured is June 30, 2009. *Id.* at 123. Johnson listed multiple side effects resulting from her medications, including weight gain, heartburn, sleepiness, dry mouth, and "bad dreams." *Id.* at 151, 156.

On October 29, 2010, her benefits application was denied. *Id.* at 52–56. On January 3, 2011, Johnson requested reconsideration. *Id.* at 57–58. Her application was reconsidered and subsequently denied on April 14, 2011. *Id.* at 59–62. Johnson requested a hearing on June 9, 2011. *Id.* at 65.

**C.     Hearing**

Johnson's hearing was conducted on November 30, 2011 in Houston, Texas, and presided over by administrative law judge Susan Soddy (the "ALJ"). *Id.* at 26. Johnson testified that she earned a GED and worked as a front desk clerk at a hotel from 2002 to 2005. *Id.* at 35–36. Johnson claimed that she left the position because her manager was "[giving her] a hard time." *Id.* at 38. She also stated that she lived in a one-story house with her husband and nephew. *Id.* at 32–33. She did

2

not have legal custody of her eleven-year-old nephew, and his living with Johnson was a temporary arrangement. *Id.* at 33.

Regarding her physical ailments, Johnson reported that she experienced problems with her back, which in turn affected her neck, shoulders, and lower extremities. *Id.* at 39. As a result, she could not sit or stand for more than approximately twenty minutes, and she reported numbness and pain in her legs. *Id.* at 40. Johnson could not walk more than 200 feet without stopping. *Id.* She was prescribed and used a cane. *Id.* at 34–35. Johnson states that she experienced several side effects from her medications, including fatigue, dizziness, and nausea. *Id.* at 41.

Regarding her daily activities, Johnson testified that she performed certain household chores, such as straightening the bed, doing the laundry, wiping counters, and retrieving mail from the mailbox. *Id.* at 41. She also drove a vehicle. *Id.* at 43. On the other hand, she had difficultly performing personal hygiene activities like washing her hair. *Id.* at 42–43. In addition, Johnson took several "cat naps" per day. *Id.* at 43. Johnson attributed her fatigue to "[t]he medication." *Id.*

Having reviewed the record and heard Johnson's testimony, the vocational expert, Herman Litt, testified that Johnson's past employment as a front desk clerk constituted semi-skilled work performed at a light level of exertion. *Id.* at 45–46. The ALJ posed a hypothetical question to Mr. Litt regarding whether an individual of Johnson's age, education level, and work experience, who could perform light work yet could not climb ropes, ladders, or scaffolds and needs a cane for ambulation, would be able to perform Johnson's past work. *Id.* at 46. Mr. Litt affirmed that the hypothetical individual would be able to work as a front desk clerk, as well as an order clerk, charge account clerk, or optical goods worker. *Id.* at 46–47.

### D. Administrative Law Judge's Decision

On January 27, 2012, the ALJ determined that Johnson was not disabled and denied her application for disability benefits. *Id.* at 12. Initially, the ALJ found that Johnson did not engage in substantial gainful activity and had a severe impairment known as degenerative disc disease of the lumbar spine. *Id.* at 17. However, at step three of the disability analysis the ALJ determined that Johnson did not have "an impairment or combination of impairments that met or medically equaled the severity" of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix A. *Id.* at 19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). Furthermore, the ALJ held that Johnson had the residual functional capacity to perform light work and could perform her past relevant work as a front desk clerk. *Id.* at 19–22.

The ALJ also determined that Johnson's anxiety and depression were not severe impairments as they "cause[d] no more than minimally vocationally relevant limitations." *Id.* at 17 (citing 20 C.F.R. § 404.1520(a), (c)). The ALJ noted four instances in which a primary care physician or orthopedic doctor described Johnson as "fully oriented," possessing normal insight and judgment, and exhibiting "an appropriate mood and affect." *Id.* at 17–18. The ALJ also highlighted that there was no evidence that Johnson visited a mental health professional to treat her claimed anxiety and depression. *Id.* at 18. However, the ALJ acknowledged that Johnson's primary care physician prescribed medications for these conditions. *Id.* at 17.

In reaching the decision regarding Johnson's anxiety and depression, the ALJ also evaluated the four functional areas set forth in section 12.00C of the Listing of Impairments. *Id.* at 18 (citing 20 C.F.R., Part 404, Subpart P, App. 1). First, the ALJ held that Johnson's anxiety and depression did not limit the activities of her daily living as she was able to independently take care of herself, her home, and her nephew. *Id.* Second, Johnson was able to function socially. *Id.* Third, there was

no evidence that Johnson suffered from any "limitation in concentration, persistence or pace." *Id.* By contrast, Johnson was able to manage her finances, follow instructions, and complete tasks. *Id.* Fourth, there was no evidence that Johnson experienced episodes of decompensation. *Id.*; *see also* 20 C.F.R., Part 404, Subpart P, App. 1 (defining episodes of decompensation as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning").

Upon learning of the ALJ's denial, Johnson requested a review of the decision. Tr. at 1. On February 4, 2013, the Appeals Council denied Johnson's request. *Id.* at 3. Consequently, the ALJ's denial became the final decision of the Commissioner. *Id.* On April 8, 2013, Johnson filed an original complaint before this court to appeal the Commissioner's decision. Dkt. 1.

## II. LEGAL STANDARD

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: (1) the ALJ applied proper legal standards in evaluating the record; and (2) substantial evidence in the record supports the decision. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

In order to obtain disability benefits, a claimant bears the burden of proving she is disabled within the meaning of the Act. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); *see also Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who was working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless [s]he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that [s]he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform h[er] previous work as a result of h[er] impairment, then factors such as h[er] age, education, past work experience, and residual functional capacity must be considered to determine whether [s]he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *see also* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears it on the fifth. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999). The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. *Greenspan*, 38 F.3d at 236.

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." *Id.* The Commissioner has the responsibility of deciding any conflict in the evidence. *Id.* If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and the court must affirm. 42 U.S.C. § 405(g); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). In applying this standard, the court should review the entire record, but the court may not reweigh the evidence, decide issues *de novo*, or substitute

the court's judgment for the Commissioner's judgment. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). In other words, the court should defer to the decision of the Commissioner as much as possible without making its review meaningless. *Id.*

### III. ANALYSIS

In her motion for summary judgment, Johnson argues that the Commissioner failed to consider the side effects resulting from her medications, which "precluded her ability to maintain the high degree of mental acuity required in the front desk clerk position." Dkt. 7 at 5. Johnson also argues that the Commissioner failed to properly evaluate her anxiety and depression. *Id.* at 6. Namely, the Commissioner should have evaluated the "non-exertional" impairments resulting from her anxiety and depression, such as her ability to interact with other people and to concentrate for long periods of time. *Id.* at 7–8. By contrast, the Commissioner argues that the ALJ's decision, including the finding that Johnson's anxiety and depression were not severe, was supported by substantial evidence. Dkt. 9-1 at 5–13.

With regard to Johnson's first point of error, the court finds that the ALJ considered the side effects of Johnson's medications for her claimed impairments. The ALJ acknowledged that Johnson was prescribed midcation to treat her anxiety and depression at various times from 2007–2009. *Id.* at 17. The ALJ also stated in her decision that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." *Id.* at 19; *Griego v. Sullivan*, 940 F.2d 942, 944–45 (5th Cir. 1991) (holding that the ALJ has discretion to discredit subjective complaints when inconsistent with an assessment of the objective medical evidence). Taken together, these statements show that the ALJ fully considered Johnson's medications, including the reported side effects thereof, in her disability determination. *See Wildbur v. Arco Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992) (rejecting the notion that a court's

"failure to expressly list or refer to each factual and legal argument . . . means that the court did not consider [them]"); *see also Prince v. Barnhart*, 418 F. Supp. 2d 863, 868 (E.D. Tex. 2005) (holding that the ALJ's acknowledgment both that a bone spur was an alleged impairment and that the ALJ had a duty to consider all symptoms, despite being followed by no explicit finding, "connotes that [the ALJ] found plaintiff's alleged bone spur not to rise to the level of an impairment"); *cf. Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001) (underscoring the importance of the context surrounding a decision when the ALJ does not explicitly discuss a factor).

Second, Johnson argues that the ALJ's step-two finding that Johnson's mental impairments were not severe is unsupported by substantial evidence. This argument, however, is belied by the court's deferential review of the record. The ALJ recognized that Johnson complained of depression to her physician in February 2007, and that she received prescriptions for her anxiety and depression in 2009. Tr. at 17. The ALJ further explained that Johnson's pain specialist prescribed pain medication between 2009 and 2011. *Id.* at 21. However, the ALJ also cited record evidence containing physicians' observations that Johnson had normal judgment and insight, appropriate mood and affect, and was fully oriented to time, place, and person. *Id.* at 17–18. In 2010 and 2011, a psychologist and psychiatrist examined Johnson and found that she had no severe mental impairments during the relevant period. *Id.* at 307–19, 399. Accordingly, the ALJ's step-two finding of non-severe mental impairments is supported by substantial evidence and will not be disturbed.

Further, when determining if a claimant has a severe impairment, the ALJ must determine the severity of a *combination* of impairments. *Crowley*, 197 F.3d at 197 (citing 20 C.F.R. § 404.1520(c)). "If the ALJ finds a medically severe combination of impairments, 'the combined impact of the impairments will be considered throughout the disability determination process.'"

*Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing 20 C.F.R. § 404.1523). However, "only those combined *impairments* found to be *medically severe* need to be considered." *Prince*, 418 F.Supp. 2d at 868. Here, although the ALJ referred to Johnson's anxiety and depression as "medically determinable mental impairments," the ALJ also held, as explained above, that these impairments were not severe. Tr. at 18. Thus, the ALJ was not required to consider the non-exertional impact of Johnson's anxiety and depression throughout the disability determination process. *See Loza*, 219 F.3d at 393; *Prince*, 418 F. Supp. 2d at 868.

Finding that the ALJ's decision is supported by substantial evidence and sufficiently articulated, the court must affirm the Commissioner's denial of benefits in this case.

## IV. CONCLUSION

Johnson's motion for summary judgment (Dkt. 7) is **DENIED**, and the Commissioner's cross-motion for summary judgment (Dkt. 9) is **GRANTED**. The Commissioner's decision is **AFFIRMED**. The court will enter a separate judgment consistent with this order.

Signed at Houston, Texas on June 11, 2014.

_____
Gray H. Miller
United States District Judge